UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTWAN M. GRAY,

      Plaintiff,

v.

CIVIL ACTION NO. 3 : 10 Cv 287

UNIQUE AUTO SALES, LLC,
SERVE:      Brian R. Pitney, Esq.
             801 E. Main St., Ste. 1800
             Richmond, Virginia 23219

and

CREDIT ACCEPTANCE CORPORATION,
SERVE:      Corporation Service Company
             11 S. 12th Street
             Richmond, Virginia 23218

and

LEASE AND RENTAL MANAGEMENT CORP.,
t/a AUTO LOAN,
SERVE::     CT Corporation System
             4701 Cox Rd., Ste. 301
             Glen Allen, Virginia 23060-6802

and

PROFESSIONAL FINANCIAL SERVICES OF
VIRGINIA, LLC
SERVE::     CT Corporation System
             4701 Cox Rd., Ste. 301
             Glen Allen, Virginia 23060-6802

and

MARINER FINANCE, LLC
SERVE::     CT Corporation System
             4701 Cox Rd., Ste. 301
             Glen Allen, Virginia 23060-6802

and

COASTAL CREDIT, LLC
SERVE:      Thomas R. Frantz
             222 Central Park Ave., Ste. 1700
             Virginia Beach, Virginia 23462-3035

             Defendants.

APR 29 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

# COMPLAINT

COMES NOW the Plaintiff, ANTWAN M. GRAY, (hereafter the Plaintiff) by counsel, and for his complaint against the Defendants, alleges as follows:

1.      This lawsuit also arises out of an often fraudulent practice in the automobile sales industry called a "yo-yo sale" or a "spot delivery." Under this scheme, the auto dealer sells a car to the consumer "on the spot" without regard to whether any third party will agree to assignment of the car note. Typically, the consumer will sign all necessary paperwork at the behest of the dealer and will receive temporary or transferred tags, a set of keys and possession of the automobile. The consumer leaves the dealership believing he or she owns the vehicle.

2.      It is important to note that as the creditor, the dealer, as it did in this case, has participated in setting the financing terms, it may receive payments from the consumer, and the dealer is under no obligation to assign the credit contract called the retail installment contract, which must contain all of the necessary terms of financing, is never conditional upon any precedent or subsequent event.

3.      In a "yo yo sale" the dealer has no such promise from or commitment to a third party assignee, leaving the dealer free to shop the contract around for the highest profit to the dealer or not assign the credit contract and keep all the profits from the financing for itself.

4.      In some cases, such as the instant case, after the dealer has sent the consumer on his way with the vehicle, the dealer is unwilling to accept the terms that the various finance companies are willing to pay for an assignment of the car note; in other words, the dealer wants to make more money selling the loan. This is where the term "yo-yo sale" comes from. Because the car dealer cannot make enough money selling the paper, the dealer attempts to undo or cancel the sale, and yank it back from the buyer, telling the buyer that he or she must come in and sign a new loan on less favorable terms or merely illegally repossessing the vehicle, as in the instant case.

2

5.      The dealer, the original creditor, does not send the consumer any written notice of adverse action.

6.      This practice, known as "spot delivery/yo-yo selling" violates the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), the U.C.C. Article 9, the Virginia Motor Vehicle Code, the Virginia Consumer Protection Act (VCPA), and constitutes the state law tort of fraud.

7.      This case also involves the impermissible access and use of the plaintiff's credit report by the co-defendant finance companies, as well as the allegation that they violated the ECOA and the FCRA by failing to provide lawful notices of adverse action.

8.      Because many of the claims alleged against the co-defendant finance companies may have been, in part, caused by the failure of the dealer to comply with its own contracts with these entities, it is possible that the finance company defendants are indemnified by a dealer agreement with the defendant dealer in this case, and  may also pursue their own cross-claims against the dealer in accordance with Judge Dennis W. Dohnal's opinion in *Whitlock v. Whitten Motor Co.*, 2005 U.S. Dist. LEXIS 38150, (United States District Court, Case No. 3:05cv 296, (Memorandum Opinion,12/28/05).

## JURISDICTION

9.      This lawsuit, being brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq and the Equal Credit Opportunity Act, 15 U.S.C. §§1691 et seq, presents federal questions and as such, jurisdiction arises under 28 U.S.C. §§1331, 1337.

10.     This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the federal law claims under 28 U.S.C. §1367.

## THE PARTIES

11.     The plaintiff, Antwan M. Gray, is a consumer as governed by FCRA, ECOA, Virginia Code '8.9A-625, and the Virginia Consumer Protection Act("VCPA"), Virginia Code '59.1-196 et seq.

12.     Defendant, Unique Auto Sales, LLC  (hereinafter "Unique Auto") is a Virginia corporation doing business as a retail automobile dealer.  At all times relevant hereto it was a "creditor" as defined and governed by the ECOA, 15 U.S.C. §1691a(e), and participated in setting the terms of the financing by its action, such as lowering the price of the vehicle from what had been agreed to in order to achieve a better "loan-to-value ratio" and thereby have a better chance of getting one of the third party lenders it would shop the loan to, to agree to finance the deal based on the terms agreed to by the plaintiff and defendant Unique Auto.

13.     Defendant, Credit Acceptance Corp. ("Credit Acceptance"), is doing business as a financial institution and doing significant business in the Richmond Division, in the Eastern District of Virginia.  At all times relevant hereto it was a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691a(e).

14.     Defendant, Lease and Rental Management Corp., ("Auto Loan"), is doing business as a financial institution and doing significant business in the Richmond Division, in the Eastern District of Virginia.  At all times relevant hereto it was a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691a (e).

15.     Defendant, Professional Financial Services of Virginia, LLC ("Professional Finance,") is doing business as a  financial institution and doing significant business in the Richmond Division, in the Eastern District of Virginia.  At all times relevant hereto it was a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691a(e).

16.     Defendant, Mariner Finance, LLC ("Mariner Finance"), is doing business as a financial institution and doing significant business in the Richmond Division, in the Eastern

District of Virginia. At all times relevant hereto it was a "creditor" as governed and defined by
ECOA, 15 U.S.C. §1691a(e).

17.     Defendant, Coastal Credit, LLC ("Coastal Credit"), is doing business as a

financial institution and doing significant business in the Richmond Division, in the Eastern

District of Virginia. At all times relevant hereto it was a "creditor" as governed and defined by

ECOA, 15 U.S.C. §1691a(e).

## FACTUAL ALLEGATIONS

18.     On or about May 16, 2009, Mr. Gray saw a 2001 Chevrolet Tahoe (the "vehicle")

on Unique Auto's lot and began negotiations for its purchase. After filling out a credit

application and during negotiations, the plaintiff haggled with Unique Auto's salesman, "Kirk"

regarding the price of the vehicle, which had started out at $11,900.00. Kirk eventually agreed to

sell the vehicle to the plaintiff for a purchase price $11,200.00. He also advised he wanted a

service contract which cost an additional $850.00. After agreeing to this purchase price and the

plaintiff agreeing to a $3000.00 downpayment, Unique Auto unilaterally agreed to reduce the

price of the vehicle $10,595.

19.     Upon information and belief, a reduction in price was done because Unique Auto

wanted to make sure the "loan to value ratio" was low enough that any potential lender would

agree to the terms of the financing necessary for the plaintiff to purchase the vehicle.

20.     Plaintiff paid $500 on May 16, 2009 and agreed to return on May 29, 2009 with

the rest of the downpayment ($2500) along with the other documents Unique Auto told him he

need to verify income, telephone bills, pay stubs, six references, and proof of insurance on the

vehicle.

21.     On or about May 21, 2009, Unique Auto sent the plaintiff's loan application to

numerous potential lenders in hopes Mr. Gray's loan application for the purchase of the vehicle

would be approved. Upon information and belief, all the defendants accessed the plaintiff's credit report to decide whether to approve the loan application.

22.     On May 29, 2009, after paying Direct Insurance $220 for insurance on the vehicle and collecting the various documents and references requested, the plaintiff returned with the requested documentation and $2500.00. On or about May 29, 2009, Unique Auto contracted to finance and sell the plaintiff the vehicle (the "Sale"). All conditions of the Sale were fulfilled and satisfied by Mr. Gray, who paid Unique Auto $3,000.00 in cash as a downpayment. A Buyers Order was signed at this time, attached hereto as **Exhibit 1**. Plaintiff was advised that the $300 processing fee noted on the Buyers Order was for getting his title work done at DMV.

23.     The Buyers Order contains language in ¶ 9 on the back that requires the dealer to return the entire downpayment if the RISC agreed to is not approved and the buyer returns the vehicle within twenty four hours of notice of credit denial.

24.     The Sale was transacted and financed by an Auto Loan Retail Installment Sales Contract ("RISC"), which lists Unique Auto as the "Creditor," and the plaintiff as the buyer. **Exhibit 2**. According to this RISC all the terms on which the Sale were agreed to are contained in the RISC, where it states on page 1 near the top, just above "Description of Vehicle," "By signing this contract, you choose to buy the vehicle on credit under the agreement on the pages on this contract." There is no clause incorporating by reference any other agreements signed by the plaintiff.

25.     According to the RISC, Unique Auto included a charge of $150.00 for Single Interest Insurance, which it kept a portion of, a product the plaintiff never asked for, which he never knew he was paying for, and it was intentionally concealed from him by Unique Auto at the signing of the documents. The only items plaintiff was advised that he was financing over the life of the loan was the vehicle and the warranty. This RISC, on the bottom of page 2, notes that the loan is being assigned to Lease and Rental Management Corp., d/b/a Auto Loan.

26.     Based on counsel for the plaintiff's past experience and because Unique Auto

refused to provide Mr. Gray with a copy of his credit report when requested, it is believed that

the credit application completed by the plaintiff only authorized Unique Auto to have access to

his  credit report for loan approval. Other than Unique Auto, Mr. Gray is not aware of authorizing

any of the other defendants to access his credit file.

27.     On May 29, 2009, Unique Auto informed the plaintiff that his loan for the vehicle

had been approved by a company named Auto Loan and that his weekly loan payments of $99.98

would be automatically deducted from his checking account. In reliance on this approval of the

loan described in the RISC and that they would put title in his name through the DMV, the

plaintiff signed these contracts. Then, after tags had been put on the vehicle, Kirk and or the

finance manager, shook his hand, handed him the keys, and congratulated him on being "a new

car owner."

28.     After putting the license plates from the "new car," acting as an agent of the

Virginia Division of Motor Vehicles, Unique Auto's finance manager presented the plaintiff with

a Virginia DMV Temporary Certificate of Registration.

29.     The plaintiff left the dealership on May 29, 2009 believing the deal was finished,

the financing was approved, and that Unique Auto would keep its promise that it would process

the paperwork with DMV to put title in his name, which he believed he had paid them to do.

30.     On June 10, 2009 the plaintiff's brother was called by Kirk, Unique Auto's

salesman, saying that Mr. Gray needed to call him. The plaintiff returned the call immediately

and Kirk advised him that he had to come down and sign some new papers since they had an

issue with  last four digits of his Social Security Number. Within thirty minutes, the plaintiff

returned to Unique Auto's lot and he was advised that they had to do some new paperwork, but

that nothing would be different. Unfortunately, when he was presented with a new RISC, he saw

that the price of the vehicle had risen to $12,400.00. The plaintiff refused to agree to this higher

7

price and the manager he was speaking to told him to get his things out of the vehicle, since he was cancelling the sale ("the Taking"). After this repossession, when the plaintiff demanded a refund of his $3000.00 downpayment, Unique Auto refused to give it to him, but promised it would be sent by the end of the week.

31     The refund did not arrive until about June 18, 2009, and it was a partial refund. Unique Auto improperly deducted $591.59 from his downpayment and returned a check in the amount of $2,408.91. **Exhibit 3.**

32.     On March 21, 2005 Unique Auto submitted the plaintiff's completed application for financing to the other defendants in an effort to sell and assign the Note, even though it is believed that the plaintiff had only authorized Unique Auto to check his credit report. Without authorization from Mr. Gray or other permissible purpose to check his credit file, besides Unique Auto, the other defendants obtained and used the plaintiff's consumer credit report.

33.     After the purchase and when he was asked to return on or about June 10, 2009, Unique Auto represented to the plaintiff that he had to sign new paperwork, since the loan through Auto Loan had not gone through and they needed to go through another company.

34.     After they received and used the plaintiff's consumer credit report, each of these assignee lenders refused Unique Auto's request to accept an assignment of a loan for the purchase of the vehicle and denied the credit application Unique Auto submitted in the plaintiff's name.

35.     In June, 2009 and April, 2010, the plaintiff received a credit report from Equifax, Trans Union and Experian. With the exception of Unique Auto, plaintiff's credit reports reflect that the defendants accessed plaintiff's credit on or about May 21, 2009.

36.     On information and belief, the Plaintiff alleges that Unique Auto has now disposed of the vehicle after its repossession (the "Disposition").

37.     Unique Auto did not provide the plaintiff any notice of the Disposition.

## COUNT ONE: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

38.    Defendants each violated the ECOA by failing to provide to the Plaintiff a.) any accurate or lawful notice of action taken upon Plaintiff's application, and/or b.) the disclosures required by the ECOA, including but not limited to those at 15 U.S.C. §1691(d)(2)(b).

39.    As a result of the above alleged ECOA violations, plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for credit denial, his loss of the credit itself, frustration, anger, humiliation, embarrassment, and distress.

40.    As a result of the above alleged ECOA violations, defendants are jointly, severally, and individually liable to plaintiff for his actual damages pursuant to 15 U.S.C. §1691e(a), for punitive damages of $10,000.00 against each defendant pursuant to 15 U.S.C. §1691e(b) and for attorneys fees and costs pursuant to 15 U.S.C. §1691e(d).

41.    Plaintiff is entitled to equitable relief against these defendants requiring delivery of compliant notices in all future instances.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT

42.    Plaintiff reiterates and incorporates paragraphs 1 through 41 above as if fully set out herein.

43.    Defendants' various decisions which resulted in the plaintiff's denial or termination of credit, or placed him in a circumstance which resulted in the taking or the refusal to sell him the vehicle each constituted an "adverse action" under the FCRA. Because each defendant used information obtained from a credit reporting agency at least in part to render such decisions, Defendants willfully violated the FCRA by failing to provide the notice required by §1681m(a).

9

44.     If the adverse actions were based on information other than information obtained from a credit reporting agency, Defendants willfully violated the FCRA by failing to provide the notice required by §1681m(b).

45.     If the adverse actions were based on information other than information obtained from a credit reporting agency, defendants also willfully violated the FCRA by failing to provide the notice required by §1681m(b).

46.     The plaintiff alleges that all defendants, except Unique Auto, willfully violated the FCRA, 15 U.S.C. §1681b(f), by obtaining and using his consumer credit report when it did not at that time have a permissible purpose to do so.

47.     In the alternative of a willful violations, the Defendants' FCRA violations were negligent.

48.     As a result of the above alleged FCRA violations, the plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for credit denial, his loss of the credit itself, frustration, anger, humiliation, fear, embarrassment, and other emotional and mental anguish

49.     As a result of the above alleged FCRA violations, plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for credit denial, his loss of the credit itself, frustration, anger, humiliation, fear, embarrassment, and other emotional and mental anguish.

50.     As a result of the above alleged FCRA violations, plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for credit denial, his loss of the credit itself, frustration, anger, humiliation, fear, embarrassment, and distress.

51.     As a result of the above alleged FCRA violations, the defendants are individually liable to plaintiff for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), or jointly and severally liable for actual damages pursuant to 15 U.S.C. §1681n

and §1681o if the amount of actual damages is greater than the statutory amount; defendants are also individually liable for punitive damages pursuant to 15 U.S.C. §1681n(a)(2), and for attorneys' fees and costs pursuant to §1681n and §1681o.

52.     Plaintiff is entitled to equitable relief against all defendants requiring delivery of compliant notices in all future instances.

## COUNT THREE: VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (Against Unique Auto Only)

53.     Plaintiff reiterates and incorporate paragraphs 1 through 52 above as if fully set out herein.

54.     Unique Auto violated the VCPA, including by example only and without limitation, its prohibition at Va. Code § 59.1-200(14) against using any deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction by each, or by any one or a combination of the following actions:

    a.     by stating that financing was approved when it had not been, (this violation is pled in the alternative to the allegations that the contract was final); and by misrepresenting that the processing fee was compensation for processing the title documents with DMV (misrepresentation, deception, false promise);

    b.     by failing to sign the title to the automobile over to the Plaintiff at the time of sale to transfer ownership to him when it promised to do so (false promise);

    c.     by failing to process the documents and pay the fees to the Department of Motor Vehicles after promising to do so (false promise, deception); and

    d.     by utilizing a business practice of telling the plaintiff it would obtain new title and tags for them when Unique Auto uses this purported "service" as a means to hide the fact that it is not transferring the old title to the consumer at the time of sale (collectively, the "Misrepresentations" and the "VCPA Violations").

    e.     by concealing the charge on the RISC for single interest insurance from which it would receive a portion of the fee.

11

55.     Unique Auto committed the VCPA violations deliberately and willfully.

56.     As a result of the VCPA violations, the plaintiff has suffered substantial actual damages including by example only and without limitation, the repairs necessary to fix the trade-in vehicle from the vandalism to it while possessed by Unique Auto, the loss of the value of the automobile purchased from Unique Auto, the loss of use of this automobile, the diminution in value of the downpayment/trade-in, the cost of substitute transportation, inconvenience, aggravation, humiliation, other emotional and mental anguish and distress, and other incidental and consequential damages which were reasonably foreseeable by the defendant.

57.     The plaintiff is entitled to the greater of his actual and treble damages and $1,000.00 and his costs and attorneys fees' pursuant to Va. Code § 59.1-204.

## COUNT FOUR: FRAUD
### (Against Unique Auto Only)

58.     Plaintiff reiterates and incorporates paragraphs 1 through 57 above as if fully set out herein.

59.     Unique Auto made the misrepresentations so that Mr. Gray would sign the Buyers Order and become obligated to pay this amount.  It did so in order to make the plaintiff believe that he was locked into the credit sale, to prevent him from continuing to compare prices, terms of credit or pricing, and to provide Unique Auto leverage in order to later force the plaintiff to accept alternate terms of credit more profitable to the dealer.

60.     Unique Auto intentionally misrepresented that it would make the plaintiff the owner of the car by preparing the Buyers Orders and the RISC in order to obtain his signature on these documents, and deliberately concealed the single interest insurance charge.

61.     At the time Unique Auto intentionally misrepresented that it would make the plaintiff the owner of the car, it did not have a then-present intent to perform under the Buyers Order and the Credit Contract and it did not have a then-present intent to execute and complete a permanent Certificate of Ownership even though it indicated it would do so in order to obtain the

12

plaintiff's signatures on the sales and transaction documents. In the alternative, Unique Auto misrepresented that financing had been approved when it did not in fact have knowledge to support this claim.

62.     The plaintiff allege on information and belief that Unique Auto uses such misrepresentations and deceitful yo-yo sales as its standard business practice.

63.     The plaintiff relied on Unique Auto's misrepresentations by signing the Buyers Order and the Credit Contract and becoming obligated under them, accepting what he thought was delivery of the vehicle, getting an insurance policy on the vehicle, providing a $3000.00 downpayment, and showing and presenting the new vehicle to his friends, family, and/or co-workers. He considered himself the owner of the car because Unique Auto's statements and documents described him as such.

64.     Unique Auto also intentionally misrepresented at the time of sale that the financing contained in the Credit Contract had been approved when it had not been. (This allegation is in the alternative to the allegation that the sale and contract were final).

65.     Unique Auto made these misrepresentations so that on the one hand the plaintiff would sign the Buyers Order and Credit Contract and become obligated to buy the vehicle and be obligated to those payments, but on the other hand, by not processing the title documents with DMV until it was able to sell the loan, it could repossess the automobile if it decided not to go through with the sale at a later date.

66.     Unique Auto further misrepresented that for a fee it would process the documents for plaintiff to receive his new title and tags for his car from the Department of Motor Vehicles. Plaintiff agreed to and did pay this fee.

67.     As the agent for the plaintiff and as well for the Virginia DMV, Unique Auto was required to perform these Department of Motor Vehicle services immediately and had a fiduciary duty to perform these services.

13

68.    When Unique Auto made the unconditional representation that it would perform these immediate services for plaintiff, it had no intention of performing these services as required; furthermore, it never performed these services.

69.    Unique Auto's scheme of obtaining a fee to perform the Department of Motor Vehicle services for the plaintiff is actually a means to hide the fact that it does not transfer title to consumers at the time of sale; this purported "service" is created solely for its benefit to hide its conduct, to allow it to demand a greater purchase price after the sale, and if not complied with, then seize possession of vehicles after a sale, and to keep that sale from showing up in the official chain of title.

70.    The plaintiff relied on these misrepresentations by signing the Note, signing and initialing the Buyers Order, and getting his own insurance on the automobile.

71.    The plaintiff was harmed by Unique Auto's misrepresentation as to its intent to perform the Department of Motor Vehicle services and by its breach of its fiduciary duty to perform those services and was harmed by the other misrepresentations. As a result of the Defendant's multiple acts of fraud and/or misrepresentation, the plaintiff has suffered substantial actual damages including the loss of his insurance payment, loss of his downpayment (partial), inconvenience in that he had no vehicle to drive after the repossession, the cost of substitute transportation, the loss of the value of the vehicle he purchased from Unique Auto, the loss of use of this vehicle, inconvenience, aggravation, humiliation, and other emotional and mental anguish and distress, and other incidental and consequential damages which were reasonably foreseeable by the defendant.

72.    Defendant Unique Auto knew that all of the above-alleged misrepresentations were false when it made them.   It committed the fraud willfully and with deliberate intent. It did so with actual and legal malice to the plaintiff and with reckless disregard of his rights and interests. Accordingly, Unique Auto is also liable for punitive damages.

14

## COUNT FIVE: VIOLATION OF ARTICLE 9 OF UNIFORM COMMERCIAL CODE
### (Against Unique Auto Only)

73.    The plaintiff reiterates and incorporate paragraphs 1 through 72 above as if fully set out herein.

74.    After the Sale was transacted, the Credit Sale and Notes and Unique Auto were governed by Article 9 of the Uniform Commercial Code.

75.    Upon the taking, Unique Auto failed to comply with the default, notice and disposition requirements of Article 9 of the U.C.C. in one or more of the following ways, by example only and without limitation:

a. By taking possession of the vehicle though the plaintiff was not in default;

b. By failing to provide to the plaintiff any notice of disposition after the taking.

76.    As a result of the above alleged failures of Unique Auto to comply with Article 9 of the U.C.C., it is liable to plaintiff for the greater of his actual damages and liquidated damages pursuant to Virginia Code §8.9A-625 in the amount of the total finance charge and 10% of the principal upon the Note.

WHEREFORE, the plaintiff prays for judgment against the defendants, jointly and severally, and individually for their actual, liquidated, punitive and statutory damages, for equitable relief; for reasonable attorney's fees via both the statutory claims, as well as the equitable power of this court to award these fees due to Unique Auto's fraud; and pre-judgment and post-judgment interest; for the costs of litigation; and for such other and further relief as the Court deems just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

ANTWAN M. GRAY,

By _____
            Counsel

15

John Cole Gayle, Jr.
VSB No. 18833
The Consumer Law Group. P.C.
5905 West Broad St., Suite 303
Richmond, Virginia 2322\30
(804) 282-7900
(804) 673-0316 Facsimile